UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL S. SANDIGO,<br>　　　　Plaintiff,<br>　v.<br>MICHAEL C. SAYRE, et al.,<br>　　　　Defendants. | Case No. 12-cv-00980-WHO (PR)<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION FOR SUMMARY**<br>**JUDGMENT** |

## INTRODUCTION

Plaintiff Daniel Sandigo claims that medical staff at Pelican Bay State Prison provided constitutionally inadequate post-surgical medical care for his shoulder in violation of 42 U.S.C. § 1983.  Having provided Sandigo with the required warnings under *Rand v. Rowland*, 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc), defendants move for summary judgment.  (Docket No. 37.)  The evidence necessary to establish deliberate indifference to serious medical needs is quite substantial.  Sandigo has not offered any evidence that would constitute a material disputed fact to show deliberate indifference.  Accordingly, defendants' motion for summary judgment is GRANTED.

## STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant

1 is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations omitted).

## PRELIMINARY MOTIONS

Sandigo moves to deny (or stay) summary judgment so that he can obtain "documentation and necessary information," including a copy of his complete medical file. (Docket No. 47 at 1.) Nothing in the record or in Sandigo's arguments warrants staying the action. Sandigo has had at least two prior opportunities to obtain the discovery he seeks. In April 2014, four months before defendants filed their motion for summary

2

1  judgment, prison officials informed Sandigo he could obtain a copy of his complete
2  medical record, but he never complied with the necessary procedures to complete
3  discovery.  Then I gave him a second chance when I denied his motion to compel, but
4  neither he nor defendants sought to set a time to review the file and to resolve the
5  remaining discovery disputes.  (Docket No. 46.)  While I blame defendants more than
6  Sandigo for this failure, he could and should have sought to meet and confer as directed by
7  the Court's Order.  Critically, having reviewed the evidence provided with the parties'
8  submissions on this motion for summary judgment, there is no reason to believe that the
9  additional discovery sought by Sandigo would help him.  His own admissions and the
10 evidence he submitted in opposition to this motion show no genuine dispute as to any
11 material fact.  He provides only speculation, not persuasive reasons, that further discovery
12 will help.  Accordingly, Sandigo's motion to deny or stay is DENIED.

Sandigo moves for sanctions (Docket No. 48) because defendants did not meet and confer with him in accordance with the Court's order denying his motion to compel discovery.  (*See* Docket No. 46.)  Each party asserts that the other failed to initiate contact regarding the Court's order.  Because it appears that each party is at fault, issuing sanctions is not appropriate, and Sandigo's motion is DENIED.  Sandigo's motion to strike defendants' opposition to his motion for sanctions, and for a hearing (Docket No. 56), are DENIED as moot.

Sandigo's motion to extend time to file his opposition (Docket No. 49) is GRANTED, even though the Court previously stated that time would not be extended (*see* Docket No. 46).  The parties failed to meet and confer as directed by the Court, thereby depriving the parties of an opportunity to resolve their discovery disputes.  To make up for this lost opportunity, and in the interests of due process, the Court reviewed the opposition and considers it part of the record.

**FACTUAL BACKGROUND**

In his complaint, Sandigo alleges that Gregory Lewis, the former warden of Pelican Bay, M.A. Cook, the former Associate Warden of Health Care Operations, Michael Sayre,

3

Chief Medical Officer at Pelican Bay, and Nancy Adam, a doctor at Pelican Bay, improperly denied him access to physical therapy ("PT") after arthroscopic surgery on his left shoulder, resulting in continued pain and an impaired shoulder.

The following factual allegations are undisputed unless specifically noted otherwise. On May 26, 2009, Dr. Gregory Duncan, an orthopedic surgeon who works as an independent contractor for Pelican Bay, performed arthroscopic surgery on Sandigo's left shoulder. (Mot. for Summ. J. ("MSJ"), Ex. A at 4.) The reason for the surgery was to treat a torn rotator cuff and to remove bone spurs. (*Id.*) Sandigo asserts that Duncan told him that post-surgery rehabilitation process would last about six months, and that motion stretching and PT were part of this process, PT being the most important. (Compl. at 10-11.)

On June 17th, Sandigo spoke to a nurse and was seen by Duncan, who ordered x-rays. They showed no damage. (MSJ at 3; Ex. A at 4.) Duncan instructed Sandigo on appropriate exercises and recommended post-operative PT. (*Id.*, Ex. A at 4.) Because Duncan was an independent contractor and not an employee of the California Department of Corrections and Rehabilitation, he could only recommend, rather than order, PT. (MSJ at 3.)

Sandigo again saw Duncan on June 24th. (*Id.*, Ex. A at 4.) Sandigo told him that he had performed the exercises but had not been to PT. (*Id.*) There is no indication that Duncan expressed shock or concern that Sandigo had not yet had PT. On June 30th, Sandigo saw Duncan, and, later in the day, also saw Dr. Claire Williams. Sandigo told Williams that Duncan had recommended PT. (MSJ at 4.) Williams submitted a request for PT for Sandigo. (*Id.*) The request was denied on July 2nd because PT was not available at Pelican Bay from July 1st to September 7th because the contract for PT services had expired, and the parties had not yet agreed on a new one. (*Id.* at 11.)

On August 5th, Sandigo saw Duncan for his final post-surgery follow-up. At this visit, Duncan noted that Sandigo's shoulder had "90% of its normal range of motion with no crepitus and excellent rotator cuff strength." (*Id.* at 4.) Sandigo said that he had

minimal pain in his shoulder. (*Id.*) Duncan noted that PT was currently unavailable (*id.*), but nothing in his notes indicates concern that a lack of PT would affect Sandigo's shoulder. Duncan's treatment plan did not include any more appointments with Sandigo or any other requests for PT. (MSJ, Ex. B PHRS-000468.) Duncan instructed Sandigo on light exercises he could perform in his cell and specifically warned him not to do push-ups. (MSJ at 4; Compl. ¶ 51.)

According to Sandigo, Duncan was "shocked" on August 5th that he had not had PT, despite the requests Duncan made for it. (Compl. at 14.) Sandigo asserts that Duncan decided not to make any more requests for PT because such treatment would likely not be effective at that point, and that the request would likely be denied. (*Id.*) Duncan recommended that Sandigo perform light exercises in his cell, starting gently and then increasing them in intensity over time. (*Id.*) He also told Sandigo that "he should be okay." (*Id.*) There is no indication that Duncan thought that the lack of PT would have any ill effects on Sandigo's shoulder.

It is undisputed that from August 5th to December 26th, Sandigo reported no problems with his shoulder and requested no medical appointments. (MSJ at 4; Compl. ¶¶ 45-52.) On December 27th, he submitted a sick-call request on which he wrote, "I had surgery on my left shoulder 7 months ago. I still have the same pain but only worse now. Something is still wrong with my shoulder." (MSJ, Sayre Decl. ¶¶ 36f-h.) Sandigo admitted to a nurse on December 28th that he "started doing pushups again about a month ago and now does about 50 at a time." (MSJ, Ex. B, PHRS-000470.) In other words, Sandigo reported no problems with his shoulder until one month after he started doing push-ups.

On January 26, 2010, Sandigo saw Williams. He told her that he had never been free of pain since his surgery, continued his recommended exercises, "taken it easy," and yet still has pain, which he rated as a 7 or 8 on a scale of 10. (*Id.*) Since December 27, 2009, when Sandigo reported experiencing pain, Pelican Bay "has provided him with more than two years of visits treatments, including pain medications, months of PT sessions,

several steroid injections, multiple consultations with Dr. Duncan, and x-rays and MRIs." (MSJ at 5.) For example, on February 23rd, Sandigo started three days of PT and was instructed on exercises that he should perform for two months. (MSJ, Ex. A at 4.) According to Sandigo, his physical therapist, Ryan Farr, said that the lack of prior PT was "a bad thing that could have serious long term consequences with serious damage to his shoulder." (Compl. at 16.)

On May 18th, Sandigo saw Williams and told him that his shoulder had not improved. (*Id.* at 18.) In July, Sandigo met with Duncan, after which an x-ray was taken. The results were inconclusive. (*Id.*) Duncan said that he could hear grinding and popping in Sandigo's shoulder. (*Id.*) On August 18th, an MRI scan was performed. It showed no abnormalities. (*Id.*) On September 15th, Duncan administered an anti-inflammatory injection to his left shoulder. (*Id.*) From January to March 2011, Sandigo had eight PT sessions. (MSJ, Ex. A at 4.)

## DISCUSSION

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (equating standard with that of criminal recklessness). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* Consequently, in order for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. *See McGuckin*, 974 F.2d at 1060.

In order to prevail on a claim of deliberate indifference to medical needs, a plaintiff must establish that the course of treatment the doctors chose was "medically unacceptable under the circumstances" and that they embarked on this course in "conscious disregard of an excessive risk to [plaintiff's] health." *See Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004). A claim of mere negligence related to medical problems, or "the inadvertent failure to provide medical care, or a difference of opinion between a prisoner

patient and a medical doctor, is not enough to make out a violation of the Eighth Amendment. *Id.*; *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). The mere fact that a prisoner does not receive adequate medical care does not necessarily create a claim for "deliberate indifference" to serious medical needs for purposes of imposing liability under 42 U.S.C. Section 1983. *Id.* at 105-06. Mere negligence or "the inadvertent failure to provide medical care" will not sustain a Section 1983 claim. *Id*. at 105.

The undisputed record shows that Sandigo received continued, reasonable treatment following his shoulder surgery: pain medications, several consultations with, and examinations by, doctors, and instructions on exercises that he could perform in his cell. For seven months after surgery, Sandigo reported no pain nor sought any medical treatment. Sandigo has presented no evidence that the failure to provide PT would have prevented the pain he now experiences, which started a month after he began doing push-ups. Nor has he presented evidence that creates a genuine dispute that defendants knew that without PT he faced a substantial risk of serious harm and disregarded that risk. PT was simply one option among many to treat Sandigo's condition, and other reasonable treatments were provided.

A mere disagreement between patient and doctor is not sufficient to show a violation of the Eighth Amendment. *Toguchi*, 391 F.3d at 1051, 1058. The Court has reviewed Sandigo's lengthy opposition, some 335 pages, including the many pages of his medical records. Nothing in this record supports Sandigo's assertion that Duncan, or any other medical staff person, stated or suggested that PT was a necessary or critical post-surgical treatment. While, according to Sandigo, Duncan expressed shock that his request for PT was denied, Duncan still felt that Sandigo would be "ok" and did not indicate that the lack of PT would have any ill effects on his shoulder.[1]

---

[1] Sandigo claims that defendants should have found some way to provide PT during the suspension of such service. He asserts that this violated a state law requiring prison officials to summon emergency medical care. *See* Cal. Gov't Code § 845.6. As stated, Sandigo has not shown a genuine dispute that PT was medically necessary. It follows that he has not shown that the unavailability of PT at Pelican Bay required prison officials to summon "immediate medical care" under § 845.6. Accordingly, summary judgment will

It is also worth noting that Sandigo did push-ups even though he had been instructed not to. His own actions in contravention of direct medical advice may have aggravated his shoulder, and his assertion that the lack of PT caused his current condition is speculative at best. There is no evidence that would show that the defendants were deliberately indifferent to his serious medical needs. Defendants' motion for summary judgment is GRANTED.

## CONCLUSION

Defendants' motion for summary judgment (Docket No. 37) is GRANTED. The Clerk shall terminate all pending motions, enter judgment in favor of Lewis, Cook, Sayre and Adam as to all claims, and close the file.

**IT IS SO ORDERED.**

**Dated:** March 23, 2015

_____
WILLIAM H. ORRICK
United States District Judge

---

be granted in favor of defendants on this claim.